**Raymond O. CRAWFORD, etc.**

v.

**W. R. LOVING, Superintendent, et al.**

**Civ. A. No. 78–0092–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 14, 1979.

Order Denying Relief from Judgment
Oct. 18, 1979.

Burt L. Saunders, George L. Rogers, III, Saunders, Rogers & Saunders, Hampton, Va., for plaintiffs.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

### I. *FACTS*

Complaint was filed 26 January 1978 seeking damages for a constitutional deprivation under 42 U.S.C. § 1983. In due time a motion to dismiss with supporting brief was filed by the Attorney General of the Commonwealth of Virginia. Plaintiff failed to file a responsive brief, and the

action was dismissed as barred by Eleventh Amendment, but plaintiff was granted leave to file an amended complaint.

Plaintiff, ignoring the fact that leave to file an amended complaint had been granted, filed a motion for leave to file an amended complaint. After some delay an amended complaint was filed.

Again defendants filed a motion to dismiss. Again amazingly enough, plaintiff filed no brief in opposition. The amended complaint was so inexpertly drawn that the Court directed the filing of a more definite statement in lieu of dismissing the action. More importantly, the Court noted its "concern that plaintiff is being represented by counsel with insufficient experience," and directed counsel examine DR 6–101 and to seek assistance if he entertained substantial doubt about the propriety of his continued representation.

A more definite statement was timely filed by plaintiff, to which defendant filed an answer followed by a motion for judgment on the pleadings as to one of the defendants. Counsel for plaintiff once again failed to file a brief in opposition to the motion. Further, counsel failed to respond to the Court's order that he re-examine his representation and seek assistance. The defendant seeking dismissal was dismissed and counsel for plaintiff was directed to appear before the Court to excuse his failure to comply with the Court's order.

Counsel appeared and stated that he had complied with the Court's order but had failed to report compliance because he "didn't know he had to." Counsel further reported that he now recognized his inexperience, and that he planned to abandon the field of litigation, move to Florida and specialize in treasure trove law. The case was to be carried on by other, presumably more able, members of his firm.

An initial pre-trial order was entered on 28 August 1978 terminating discovery, *inter alia*, on 31 January 1979. The matter was set for a two-day trial beginning on 26 February 1979. The case was a serious one. Plaintiff, a prisoner, alleged that though he was suffering from mental and emotional disease which could be controlled by medication, defendants had with deliberate indifference deprived him of medication. Lacking the medication he became mentally unbalanced and emotionally distraught, and in obedience to "voices" he cut off his penis with a razor blade. Moreover, and critical to the issue before the Court, plaintiff was alleged to be incompetent and he proceeded by his mother and next friend.

Although defendant sought timely discovery, counsel for plaintiff initiated none on his client's behalf. Plaintiff did respond to defendants' discovery, albeit deficiently.

On 16 October 1978 counsel for plaintiff filed a motion, allegedly "pursuant to the Order entered in this Court on May 12, 1978," for leave to file a second amended complaint. The 12 May 1978 order had directed the filing within 10 days of a more particular statement. It afforded plaintiff no ground to file an amended complaint some five months later. Moreover, the motion was unaccompanied by a supporting brief as required by Local Rule 11(F) nor was an amended complaint tendered. Defendants filed their brief in opposition. As usual, counsel for plaintiff did not respond. Plaintiff's motion was denied for the reasons above mentioned. Counsel for plaintiff never attempted to correct his lapse by tendering an amended complaint (the best source for the Court to determine the propriety of filing the same) nor by filing a supporting brief for his motion.

Nothing further of substance appears of record until 27 November 1978 when a sketch for an order endorsed by counsel for all parties was forwarded to the Clerk. The sketch recited that upon motion, notice, evidence and argument the Court appoint a named lawyer as guardian *ad litem* for plaintiff. No such motion had been filed. No notice had been given. No evidence had been taken. No argument had been heard. Further, no reason for appointing a guardian *ad litem* was readily apparent on the record. The Court, being neither informed nor aware of a reason why a guardian *ad litem* should be appointed, refused the tendered sketch for an order and entered an

order specifying its reasons for refusal therefor.

On 11 December 1978, counsel for plaintiff filed a second motion seeking appointment of a guardian *ad litem*. This motion recited that "since at least 1970, the plaintiff has been suffering from various degrees of mental instability characterized as paranoid/schizophrenia, chronic undifferentiated type," that he had suffered injury while in defendants' care and custody, that a settlement in the amount of $6,000 of plaintiff's claim had been reached, that plaintiff's mental impairment made appointment of a guardian *ad litem* under Fed.R.Civ.P. 17(c) appropriate, and that all "interested parties" should be convened and that "the Court [should] approve a settlement in the amount of $6,000." Defendants, by counsel, by an appropriate pleading filed on 14 December 1978, joined with plaintiff in requesting that, "the Court approve settlement in the amount of $6,000," and release defendants from further liability.

Since proceeding by next friend satisfied the requirement of Rule 17(c), the Court refrained from appointing a guardian *ad litem* but in order to determine whether the settlement should be approved as requested by the parties and to be certain that the rights of the parties were otherwise protected, *Westcott v. United States Fidelity Guarantee Co.*, 158 F.2d 20, 22 (4th Cir. 1946), the Court referred the motion to the U.S. Magistrate, pursuant to 28 U.S.C. § 636(b)(1)(B) "to investigate the factual circumstances of this case and the appropriateness of the proposed settlement." This order was entered on 4 January 1979.

Having initiated appropriate proceedings in furtherance of the parties' motion seeking Court approval of the settlement, the Court considered that its common law and statutory[1] obligation to protect the interests of parties suffering from a disability would in timely fashion be met. This was not to be. The parties instead forwarded to the Clerk on 17 January 1979 a sketch for an order or stipulation under Fed.R.Civ.P. 41(a)(1)(ii) dismissing the case. The Magistrate, upon receipt of the stipulation, recommended that the case be dismissed, but by order of 6 February 1979 the Court refused the sketch on the ground that the Court's duty to protect the interests of an incompetent party could not be evaded by resort to Rule 41.

The matter was again set for hearing before the Magistrate on the propriety of the settlement. Shortly before the scheduled hearing the parties filed a joint motion for a stay of the hearing pending an effort by the parties to obtain a writ of mandamus against the District Court from the Court of Appeals. Though shocked by such extraordinary efforts to avoid court scrutiny of the settlement, especially when the parties had earlier requested it, this Court granted the stay. The Court could only conclude that the parties had requested Court approval of the settlement on the assumption it would be granted *pro forma*, and that upon perceiving that the Court took its obligation to incompetent litigants seriously, counsel preferred to avoid inquiry into the bona fides of the settlement.

On 18 April 1979 the Court of Appeals, without opinion, denied the petition for a writ of mandamus. Accordingly, this Court lifted the stay and again directed that the Magistrate inquire into the propriety of the settlement. The order required him to report to the Court within 30 days.

A further shocking development was discovered while the petition for mandamus was pending before the Court of Appeals. Counsel for plaintiff and counsel for defendant, being George M. Rogers, III, of the firm of Saunders, Rogers & Saunders, Hampton, Virginia, and Burnett Miller, III, Assistant Attorney General of the Commonwealth of Virginia, without disclosing their plan or purpose to this Court, appeared on petition under Va.Code § 8.01–425 (Repl. 1977)[2] before the Circuit Court of the City

---

1. *See* Va.Code § 8.01–424 (Repl.1977).

2. It is noteworthy that this section is not specifically drawn for use in pending litigation.

The section intended for that purpose is § 8.01–424.

of Hampton, Virginia, and, *without disclosing to that Court the pendency of the action in this Court,* obtained from that Court an order purporting to approve the settlement reached by the parties. That such a departure from the duty owed by lawyers to courts for candor and honorable dealings could be countenanced by the office of the Attorney General of Virginia is almost beyond belief.

Having covertly spurned the jurisdiction properly vested in this Court, and having connived at concealing the truth from the Circuit Court of the City of Hampton, defendants' counsel then filed a motion "for leave to file an Amended Motion to Dismiss and an Amended Answer" in this Court. Though no such amended pleadings were tendered when the motion was filed on 11 May 1979, the motion indicated that the proposed pleadings would deal with the defenses of *res adjudicata,* based on the Hampton Circuit Court order, and with accord and satisfaction.

An order was entered on 16 May 1979 denying the motion but "without prejudice to [defendants'] right to file such motions as to the jurisdiction of the Court as they may deem appropriate." Any further delay of the hearing before the Magistrate was specifically prohibited by the order.

II. *PROCEEDING BEFORE THE MAGISTRATE*

The settlement hearing was held before the Magistrate upon evidence *ore tenus,* stipulations, and exhibits. In due time the Magistrate filed his report, in substance recommending approval of the settlement. Defendant has filed certain objections to the report. The report first will be considered, and then the objections thereto.

After reciting in his report the testimony of plaintiff, of his mother, and of two treating psychiatrists, the Magistrate undertook to evaluate the "appropriateness of the proposed settlement." The Magistrate, in his opening sentence, called attention to a conclusion which he said was "immediately apparent." No one was able to "identify any person subject to liability" for the injury to plaintiff. He noted also that plaintiff was between the "horns of a dilemma" since in order to recover he had to prove his mental deficiency and yet such proof would render his recollection of events "highly suspect."

The Court disagrees with the Magistrate. No evidence before the Magistrate indicated that one suffering from plaintiff's mental disease is unable to recall events. Indeed, plaintiff testified before the Magistrate and his recollection of the events was undisputed and, apparently, accurate. Further, plaintiff's case does not depend entirely on his own testimony as to defendants' culpability. His medical record, if available to defendants, arguably would be sufficient to put them on notice that a failure to administer medications would result in hallucinations. Moreover, the testimony of plaintiff's mother, though lacking specificity as to exactly who was contacted, was specific that someone in authority at the prison camp was told of the imperative nature of plaintiff's need for medication. Finally, and more important, it is not decisive that no one at the hearing was able to identify any person subject to liability. Plaintiff's counsel at no time during the pendency of this action sought discovery from defendants. Under such circumstances an inability to pinpoint liability is readily understandable but it militates against approval of a settlement rather than in its favor.

The Magistrate concluded that plaintiff was "hard-pressed to prove even simple negligence," much less deliberate indifference, as required by *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Since this Court disagrees with the Magistrate's underlying conclusions, the Court has no basis for concurring in the resultant conclusion. To the contrary the Court perceives an arguable case of deliberate indifference.

"[S]atisfied beyond doubt" that plaintiff could not prevail, the Magistrate explained defendants' willingness to pay $6,000 in set-

tlement on the basis of the "inordinate amount of time and effort expended by the Commonwealth in defending this action." The record reveals that the Attorney General spent relatively little time defending the action. This is understandable; counsel for plaintiff simply did not press plaintiff's case. While the Attorney General did spend a good deal of time and effort before this Court, before the Magistrate, before the Court of Appeals, and before the Circuit Court of the City of Hampton, the purpose of those appearances was to *avoid* justifying the settlement before this Court. Such expenditures of time and effort, *after settlement was reached*, cannot justify any settlement. This Court believes that plaintiff has an arguable case of liability accompanied by a clear case of damages. It is for this reason, and not because of an "inordinate amount" of work, that counsel for defendants made an offer in settlement.

The Magistrate also concluded that plaintiff was legally competent to enter into a settlement. This conclusion was reached despite the finding of the Circuit Court of the City of Hampton barely three months before the Magistrate's hearing that plaintiff "is incompetent to handle his own finances." The Circuit Court appointed plaintiff's mother as perpetual guardian "to administer the financial affairs" of plaintiff. Regardless of the jurisdiction of a State court to approve settlement of an action pending in federal court, there can be no doubt of the power of State courts to appoint guardians of the property of incompetent persons upon a finding of incompetency. This Court would hesitate to find competence in May when a State court had found incompetence in March. Accordingly, the Court will disapprove the finding of the Magistrate on this point.

## A. *Counsel Fees*

Having erroneously found competence, and having elicited plaintiff's concurrence with the proposed settlement the Magis-

trate treated the settlement as "a *fait accompli.*" Because of his finding that plaintiff was *compos mentis*, the Magistrate concluded that this Court no longer had jurisdiction to approve or disapprove the settlement. Nevertheless he posited that this Court had "inherent jurisdiction to determine the amount of counsel fees."

The amount of fee recovery demanded by counsel for plaintiff was fifty percent! Having bungled every step of the proceeding and having agreed to a settlement without learning about defendants' case through discovery or otherwise, plaintiff's counsel sought one-half of the sum payable to plaintiff. That counsel sought this sum out of the settlement proceeds is especially significant in view of the Civil Rights Attorney's Fee Awards Act, which gives plaintiff a claim against defendants for counsel fees apart from any settlement reached with plaintiff. Nothing in the record indicates that this entitlement was considered by the parties.

Without mentioning these considerations the Magistrate found that to award counsel for plaintiff a fifty percent fee, amounting to $3,000 "would be a farce and a mockery of justice." This Court concurs. But this Court cannot understand how a 50% fee is a farce and a mockery while a 33⅓% fee, condoned by the Magistrate, should receive the Court's imprimatur as being fair and equitable. The Magistrate based his finding on the "certainty" that plaintiff would fail at trial. As noted, this Court does not share that view. Plaintiff may fail at trial but it is far from a certainty.

The Magistrate also explained his condonation of a 33⅓% fee on the ground that plaintiff's counsel did not "institute" this action, was unfamiliar with federal practice, and "picked up" the case as a "moral obligation" when his associate left the firm. While it is readily provable that plaintiff's counsel is unfamiliar with federal practice,[3] it is fatuous for counsel to claim that since he did not "institute" the action he only

---

3. Though he excuses his failure to advise the State court of the pendency of the action in this Court on his "professional opinion" that a stip-

ulation under Fed.R.Civ.P. 41(a)(1)(ii) ousted this Court of jurisdiction.

owed plaintiff a "moral" obligation. The initial complaint was filed on behalf of plaintiff by "Burt L. Saunders, Saunders, Rogers & Saunders, Attorneys at Law." Subsequent pleadings on behalf of plaintiff confirm that he continued throughout to be represented by that same law firm. Responsibility shifted from Burt L. Saunders to George M. Rogers, III, but from beginning to end plaintiff was represented by Saunders, Rogers & Saunders. Mr. Roger's obligation to plaintiff was contractual, not moral, and he deserves no equitable consideration for doing that which he was legally obligated to do.

■ The poor quality of work by counsel for plaintiff, his lack of attention to the case, his ignorance of federal procedure and his obdurant refusal or inability to learn, his neglect of the means available to develop the case, his frantic efforts to avoid this Court's inquiry into the settlement, and, significantly, his overreaching in having a person of questionable competence and understanding sign an agreement allowing counsel fifty per cent of recovery,[4] warrants, as far as this Court is concerned, a finding that plaintiff's counsel take nothing as a fee. To award counsel fees in this case would be unfair and inequitable.

B. *Settlement and Jurisdiction*

■ Though the report of the Magistrate was in all substantive respects satisfactory to the Attorney General he nevertheless filed an objection. After stating that defendants had no objection to the "result reached" by the Magistrate and after requesting the Court to "approve the terms of the settlement," the Attorney General went on to interpose the settlement itself as a bar to this Court's jurisdiction. The Attorney General also objected to any ruling by this Court on the basis of *res adjudicata,* citing the order of the Circuit Court of the City of Hampton.

In his brief the Attorney General states that the parties "no longer wish to litigate this matter further." It hardly takes argument to show that such a "reason" cannot prevail over the duty of this Court, once jurisdiction has attached, to oversee the settlement of claims asserted on behalf of incompetent persons.

■ Next the Attorney General argues that the case is settled and that therefore this Court is without jurisdiction. This argument misses the point. Indeed, it is *because* there has been a settlement that the matter is before the Court for its approval.

The Attorney General asserts that the settlement agreement was approved by the Circuit Court of the City of Hampton, "under provisions of 8.01-424 and 8.01-425, Code of Va." Whether or not this assertion was willfully untrue, it is factually untrue. And the untruthful portion is significant. Section 8.01-425 of the Virginia Code deals with "[h]ow fiduciaries may compromise liabilities due to or from them," as set out in the tag line of the section. Section 8.01-824, on the other hand, concerns the compromise and settlement of "any action or suit" involving an incompetent person. Further, it could be used when no action is pending upon settlement prior to the filing of suit. In other words, 8.01-824 would be the appropriate assimilated statute for this Court in the pending action.

The proceeding before the State court was specifically stated by that Court to be under § 8.01-425. No mention was made of § 8.01-424, the section dealing with the settlement of "any action or suit." It is disingenuous, at best, for the Attorney General blandly to claim settlement approval under 8.01-424 in the absence of anything in the record to support it. The Court accepts the view of the State judge that the order was entered "pursuant to Virginia Code Section 8.01-425."

---

4. That this was not purely a contingent fee, and thus subject to being excused as not exorbitant, is demonstrated by an exhibit in the record showing that on 6 November 1978, just two days before plaintiff's counsel wrote the Court stating the suit was settled, plaintiff and his lawyer signed an agreement for the payment of a fee of 50% of a proposed $5,000 settlement. The actual settlement was, of course, $6,000.

■ It is also significant that the issue presented to the State court was defendants' "duty to provide [plaintiff] with reasonable medical care. . . ." This duty is, of course, the common law duty of a jailer. *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977); Zalman, *Prisoners' Rights to Medical Care*, 63 J.Crim.L. 185 (1972). The common law duty was not before this Court. The proceeding here dealt with a claim under § 1983 that defendants had inflicted cruel and unusual punishment on plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Proof of one would involve proof of the other, but proof of one would not, in either case, necessarily decide the other.

■ Whatever may be the effect of these discrepancies in the presentation of the Attorney General's argument, he makes, first, the substantive point that when parties file a Rule 41(a)(1)(ii) stipulation there is nothing further for a Court to do but discontinue further action in the case. It then is ended, says the Attorney General. It was on this issue, *inter alia*, that the parties sought a writ of mandamus. And if they were correct as to their theory of the effect of the Rule, a writ should have issued. By the parties reading of the Rule, indeed by the Rule itself,[5] when a stipulation of dismissal is properly filed, there remains for the Court only the ministerial act of removing the suit from the active docket thus ending it. Such a non-discretionary act is particularly suited for mandamus. *Cent. S. Car. Ch. Soc. of Prof. Journ. v. U. S. D. C.*, 551 F.2d 559 (4th Cir. 1977). That the Court of Appeals refused to issue the writ shows that the parties are not, without more, entitled to a dismissal merely upon the filing of a 41(a)(1)(ii) stipulation.

■ Logic joins the law in compelling the conclusion that an incompetent person's suit cannot be ended upon settlement followed by the filing of a stipulation of dismissal.

It is only *when* a settlement occurs that the Court's duty to oversee the settlement arises. If that duty could be aborted by the filing of a stipulation, the role of the Court would be effectively avoided. Neither law nor logic sanction such a result.

■ A conceptual difficulty also exists. Rule 41(a)(1)(ii) requires that the stipulation be "signed by all parties who have appeared . . . ." An incompetent person appears by his next friend, a nominal party. The person under a disability is the real party. *Morgan v. Potter*, 157 U.S. 195, 198, 15 S.Ct. 590, 39 L.Ed. 670 (1895); C. Wright & A. Miller, *Federal Practice and Procedure* § 1570 (1971). Thus the joining of a next friend in a stipulation is no basis for recognizing its legal efficacy. Moreover, since the real party is incompetent, he is presumed legally incapable of signing such a document. For the same disability he is incapable of authorizing a lawyer to execute it for him. *See Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88, 89 (2d Cir. 1974).

These arguments aside, no construction of the Federal Rules should be followed which results in an injustice. Rule 1 commands that the Rules "shall be construed to secure the *just* . . . determination of every action." To construe Rule 41(a)(1)(ii), as does the Attorney General, to deprive a person under a disability of the protection of the Court is highly unjust. It is an argument unworthy of the office of Attorney General of the Commonwealth of Virginia.

### C. *Res Adjudicata*

The parties' final argument rests on the ground of *res adjudicata*. They would interpose the proceeding before the Circuit Court of the City of Hampton as a bar to any further action in this Court.

■ The Circuit Court of the City of Hampton is, in most matters, a court of

---

5. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

concurrent jurisdiction with this Court. Indeed, it is a court of plenary jurisdiction while this is a court of limited jurisdiction. Thus, the action filed by plaintiff in this Court properly could have been filed in the State court. Indeed, it properly could have been concurrently filed in both courts and independently could have proceeded to judgment in either. Whichever court first rendered an *in personam* judgment would have been entitled to have its judgment receive *res adjudicata* effect in the other court. *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Kline v. Burke Const. Co.*, 260 U.S. 226, 230–35, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

■ Application of the rule of *res adjudicata* is not mechanical. It is a rule of cooperation and harmony between courts. *United States v. Bank of New York*, 296 U.S. 463, 477–78, 56 S.Ct. 343, 80 L.Ed. 331 (1936). It is axiomatic that the rule is to be applied in any case to promote justice, not to thwart it.

■ The rule of *res adjudicata* is applied differently in *in rem* proceedings. C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3631 (1976). There the court which first obtains jurisdiction over the *res* is the court empowered to proceed to judgment as to the disposition of the *res*. But whether an action be *in personam* or *in rem*, the real question, in the context of this suit, is the conflict between the State and the federal court. *Crawford v. Courtney*, 451 F.2d 489, 492 (4th Cir. 1971).

Assuming the proceedings before the two courts were *in personam*, it is far from clear that the State court proceeding is a bar to the proceeding in this Court. The issue presented to this Court was a § 1983 claim of cruel and unusual punishment. The State court recited the existence of a common law dispute over medical care owed a prisoner by a jailer. This Court's jurisdiction was invoked for a jury trial on disputed questions of law and fact. The State court

exercised statutory chancery authority to oversee the conduct of a fiduciary, *Va.Code* § 8.01–425, with no jury right existing and none being invoked. There was a pending "law" action here; there was only a "chambers" proceeding in the State court. Finally, no judgment *in personam* was issued by the State court; it is an *in personam* judgment that one pleads in bar under the doctrine of *res adjudicata*.

The State court judge entered judgment approving a *thing, a res*. That thing it approved was a settlement. It was a proceeding *in rem*.

■ Being a proceeding *in rem* the focus shifts to which court first obtained jurisdiction over the *res*. The record shows that plaintiff first requested this Court to approve the *res*, the settlement, by motion filed on 11 December 1978. Defendants joined in the request on 14 December 1978. This submission was sufficient to confer jurisdiction; the Court's acceptance of jurisdiction was formalized by order entered on 4 January 1979. There can be no question, then, that this Court had and was exercising jurisdiction over the question of approval of the settlement at the time the Attorney General and counsel for plaintiff sought to subvert this Court's jurisdiction by instituting proceedings in the State court.[6]

The plaintiff in this case, being incompetent, is a ward of the Court. He has been badly treated by the lawyer chosen for him by his next friend. This Court has a special duty to protect plaintiff from the importunities of the Attorney General and the dereliction of counsel for plaintiff. The doctrine of *res adjudicata* was not intended to frustrate this Court, or any court, in the discharge of that duty.

Nothing herein is a reflection upon the Circuit Court of the City of Hampton. Courts must depend upon lawyers to approach the court with candor and to deal honestly and openly with the court. Courts

---

**6.** There is some doubt that any parallel proceeding in a State court can defeat federal § 1983 jurisdiction on the basis of *res adjudica-* ta. *See Henry v. First Nat. Bank of Clarksdale*, 595 F.2d 291, 298 n. 1 (5th Cir. 1979).

place this dependence upon lawyers as a matter of course and seldom is the trust abused. Courts particularly rely on representatives of the Commonwealth or the United States since their duty to the citizenry reinforces their duty to the Court to see that justice is done in every case. Thus, when the Attorney General and counsel for plaintiff presented to the State court what appeared to be a straightforward statutory approval under Va.Code § 8.01–425, the Court had every reason to rely upon the lawyers. The lawyers' deliberate concealment from the State judge of the fact of the pendency of the action in this Court would not have been suspected by even the most cautious of judges. The lawyers simply defaulted in their duty to the State court. It was only by subterfuge that they were able to obtain the order which they now claim bars this Court's inquiry into their treatment of the incompetent plaintiff. By making this argument the Attorney General compounds the iniquity.

### III. *CONCLUSION*

▇▇▇ It follows from all the foregoing that so tainted a settlement cannot be approved. The fee received by counsel for plaintiff must be disgorged. A settlement, or trial, must be had upon competent legal advice and loyal service.

The Court will appoint a discreet and competent attorney as guardian *ad litem* for plaintiff [7] with authority and direction to make full inquiry into this case, including the current state of plaintiff's mental deficiency, conduct such discovery and file such pleadings and briefs as he may deem requisite, conduct such settlement negotiations as in his judgment may be in plaintiff's interest, and proceed to trial if such be justified.

7. The question might well be asked why the Court didn't take this action in response to the parties' motion to that end. Indeed, the Attorney General argues in his brief that the Court's failure so to do amounted to a holding that the next friend was competent to effect a settlement without Court intervention! He says the Court is bound by this holding—by what theory of law he does not say.

Be that as it may, the Court refused to appoint a guardian *ad litem* purely to save money.

For the foregoing reasons it is ORDERED that

1. The settlement is disapproved;

2. The firm of Saunders, Rogers & Saunders is DIRECTED to pay into the registry of this Court within 10 days of the entry hereof all sums received by them in payment of a fee in this action;

3. The sum presently held by the Circuit Court for the City of Hampton, Virginia, to the credit of that Court for the benefit of Lillian Crawford, Limited Guardian of Raymond O. Crawford, a person under a disability, is not intended by this order to be disturbed and it shall continue under the control of that court in accordance with its order of 1 March 1979 in the chancery cause therein styled *In Re Raymond O. Crawford*, In Chancery # 17495;

4. Thomas G. Slater, Jr., a discreet and competent attorney at law, is appointed guardian *ad litem* for Raymond O. Crawford, a person under a disability, to protect and assert his interests in this action;

5. The Report of the Magistrate is disapproved.

### ORDER

Defendants moved the Court under provision of Rule 60(a) for relief from this Court's order and judgment of 14 September 1979. The Court has considered the briefs of counsel and of the guardian *ad litem* and has examined the records of this Court.

Insofar as the memorandum of 14 September 1979 states that no amended pleadings were tendered with the motion filed by defendants on 11 May 1979, the memoran-

Guardians *ad litem* are ordinarily paid their fee out of the proceeds of settlement. Under the Magistrate system federal courts may utilize the services of a Magistrate to make inquiries such as this without cost to the parties. Accordingly, the Court referred the matter to the Magistrate for inquiry with the purpose of obtaining the benefit of a guardian *ad litem*'s disinterested overview without incurring the cost.

dum was in error. The memorandum is corrected to show that there accompanied the motion for leave to file amended pleadings, (1) an amended answer, (2) an amended motion to dismiss, and (3) an order endorsed by all counsel consenting to the filing of such amended pleadings.

The motion for relief is GRANTED with respect to the correction hereinabove set forth. In all other respects it is DENIED.