Rose Mary GREEN, Personal Representative of the Estate of Malice Wayne Green, Deceased, Plaintiff–Appellee,

Jessie Green, Jr.; Ollie Frye; Kim Nihiser, as Mother and Next Friend of Jacqueline Dennison, a minor; Peggie Wright; First Busey Trust & Investment Company, as guardian of the Estate of Jacqueline Dennison; Shakieta Strawter; Lachita Miller; Edniquech Grubbs; Patricia Green; Treise Green; Sherry Green, Rose Mary Green; and Monica Green, Claimants–Appellees,

Ernest L. Jarrett (95–1940); Brunetta Brandy (95–1941), Attorneys, Movants–Appellants,

v.

Larry NEVERS, et al., Defendants.

Nos. 95–1940, 95–1941.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1997.

Decided April 29, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 6, 1997.

Rose Mary Green (briefed), Detroit, MI, pro se.

Judith A. McNair, Detroit, MI, for plaintiff–appellee.

Ernest L. Jarrett (argued and briefed), Detroit, MI, for Ernest L. Jarrett.

Justin C. Ravitz, Patrick J. Burkett (argued), Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Jessie Green, Jr., Ollie Frye, Patricia Green, Treise Green, Sherry Green, Monica Green.

Ralph J. Sorlin, Reosti, James & Sirlin, Detroit, MI, for Nihiser.

Thomas A. Ricca, Detroit, MI, for Peggie Wright.

Joseph W. Phebus (briefed), Phebus, Winkelmann, Wong & Bramfeld, Urbana, IL, for First Busey Trust and Investment Co.

Kenneth N. Hylton, Detroit, MI, for Shakieta Strawter, Lachita Miller.

Saunders V. Dorsey (argued and briefed), Farmington Hills, MI, Jerome P. Barney (argued), Jerome P. Barney & Associates, Detroit, MI, for Edniquech Grubbs.

Donald A. Thigpen, Jr. (briefed), National Bar Ass'n, General Counsel, Washington, DC, amicus curiae National Bar Ass'n.

James W. McGinnis (argued and briefed), Detroit, MI, for Brunetta Brandy.

Before: LIVELY, MERRITT, and DAUGHTREY, Circuit Judges.

LIVELY, Circuit Judge.

Malice Green died on November 5, 1992, allegedly as the result of a beating by Detroit police officers. Four days later attorney Brunetta Brandy, now an appellant, filed a wrongful death action in a Michigan state court in the name of Rose Mary Green, widow and personal representative of Malice Green's estate. Within less than one month the City of Detroit offered to settle the case for $5.25 million. Now, more than four years later, two of the many lawyers involved in the case are contesting the amount and division of the district court's attorney fee award. It is time to bring an end to this unseemly spectacle.

## I.

The caption of the complaint filed in state court showed only Rose Mary Green as the plaintiff. Following removal of the case to federal court, where it was assigned to Judge Gerald Rosen, however, attorney Gerald

Thurswell appeared on behalf of Malice Green's oldest daughter, Edniquech Grubbs. Although Thurswell stated that Ms. Grubbs had been appointed co-personal representative with Mrs. Green, he did not file a copy of the order appointing Ms. Grubbs with the document.

After an abortive attempt by attorney Brandy to dismiss the action pursuant to FED.R.CIV.P. 41(a)(1)(i), the attorneys then on record as representing the parties, including the defendant City of Detroit, advised the court that they desired to place a settlement agreement on the record. The attorneys also sought to seal the record, but the court denied this request noting the widespread publicity and interest in the case. Disturbed by the fact that the settlement agreement provided for payment of $1.7 million in attorney fees even though very little legal work had been performed, the court directed counsel to file affidavits relating to the amount of work performed by each attorney in the case. To clear the record concerning the attempted dismissal, the parties stipulated to reinstate the case. All of these steps had been taken by December 28, 1992, less than two months after Malice Green's death.

Shortly thereafter, attorney Thurswell, who represented several individual claimants as well as Ms. Grubbs as co-personal representative, advised the court that he had been dismissed by several of the claimants and he filed a motion to withdraw as counsel for all of his clients. The court set a hearing on the motion to withdraw for January 11, 1993. During the next week, attorney Justin Ravitz filed an appearance on behalf of Malice Green's parents and three sisters and a later appearance on behalf of Ollie Frye, the decedent's maternal grandmother. Although he did not file a formal notice of appearance until January 14, 1993, attorney Joseph Phebus notified the court at about the same time that he would be representing Kim Nihiser, the mother and next friend of Jacqueline Dennison, a minor child of the decedent.

On January 7, 1993, attorney Brandy filed a notice of appearance as co-counsel for Edniquech Grubbs, for whom attorney Thurswell had previously appeared, and a stipulation to dismiss under FED.R.CIV.P. 41(a)(1)(ii)

signed by John Quinn, an attorney for the City of Detroit, and Ms. Brandy as "attorney for plaintiff." Judge Rosen met with all counsel on January 11, 1993. At that time, the attorneys advised the court that the proposed settlement had broken down but that the parties wished to pursue further negotiations. When the court inquired about the pending stipulation to dismiss, attorneys Ravitz and Phebus stated that they had not signed, and indeed objected to, the stipulation. On January 14, 1993, attorney Phebus filed a formal objection to the dismissal, contending that dismissal would jeopardize Jacqueline Dennison's rights.

On January 15, 1993, attorney Saunders Dorsey filed an appearance on behalf of Edniquech Grubbs, in her representative capacity, and on February 1, attorney Jerome Barney filed an appearance on behalf of Edniquech Grubbs, also in her representative capacity. On that same date the City of Detroit filed a motion to dismiss arguing that it was protected by governmental immunity.

The court granted Mr. Thurswell's motion to withdraw as attorney for Edniquech Grubbs and others on March 4, 1993, and issued a notice setting a scheduling conference for March 25, 1993. The notice directed the attorneys to be prepared to discuss several aspects of the case, including the court's subject matter jurisdiction. Prior to the scheduling conference, the court was advised that the parties had reached a final settlement with the city for $5.25 million allocating different amounts to each of the claimants and $1.2 million to the attorneys for the estate. At the scheduling conference, counsel for the estate advised the court of their position that the court no longer had jurisdiction because of the stipulated dismissal and that they intended to proceed in probate court. The court invited briefing on its jurisdiction, and several parties filed briefs addressing the issue. On April 13, the court entered an order finding the stipulation to dismiss ineffective and retaining jurisdiction.

After unsuccessful motions by various counsel for reconsideration, to proceed in probate court, and to disqualify the judge, the court entered a consent judgment on July 18, 1994. This document granted judg-

ment in the amount of $5.25 million in favor of the estate and against the City of Detroit only, the individual defendants never having been served. The court conducted a hearing on the distribution of the $5.25 million on October 21, 1994. At that time, the court also heard arguments on several jurisdictional issues. On November 7, 1994, the court issued an opinion denying the various motions to dismiss, clarifying the distribution of settlement proceeds, determining that no valid contingent fee agreement existed, and withholding determination of the issue of attorney fees. At the same time, the court also entered a separate order directing partial payment of the settlement proceeds to the claimants. After the dismissal of an appeal and petition for a writ of mandamus concerning the November 7, 1994 rulings, the court reviewed the affidavits, briefs, and supplemental information submitted by attorneys Brandy, Jarrett, and Dorsey and entered an order setting the amount of attorney fees for each on July 28, 1995.

Having previously found that none of the attorneys had binding contingent fee agreements with the Malice Green estate, the court considered the amount of fees they would be entitled to receive from the estate on a *quantum meruit* basis. Applying the factors listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct, the court awarded fees as follows: Ernest Jarrett, who worked with Attorney Brandy under a "fee sharing agreement," $250,000; Brunetta Brandy, $173,000; Saunders Dorsey, who represented Rose Mary Green individually, $170,000. This order also directed the distribution of the remaining settlement proceeds, which had been escrowed awaiting determination of fees.

## II.

This court consolidated attorney Brandy and Jarrett's separate appeals. The prolix arguments of the appellants boil down to four issues:

(1) Whether the district court had subject matter jurisdiction;

(2) Whether the case should have been dismissed pursuant to Rule 41;

(3) Whether the district court erred in rejecting the contingent fee agreement and setting the amount of attorney fees;

(4) Whether Judge Rosen should have disqualified himself.

We discuss these issues in the order listed.

### A.

The attorney-appellants assert that the district court lacked subject matter jurisdiction over this wrongful death action, contending that the complaint alleged no federal claims against the City of Detroit. Review of the complaint belies the appellants' contention. Count IV of the complaint alleges that the City of Detroit's police department and chief of police "permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable, and excessive force by police officers." The complaint further alleges that the City of Detroit "has maintained no system of review or has failed to identify instances of improper use of force or to discipline, more closely supervise, or retrain specific officers who in fact improperly used such force," and that "[t]he foregoing acts, omissions, and systematic deficiencies are policies and customs" of the city. As the district court noted, the allegations in Count IV are sufficient to state a claim for relief under 42 U.S.C. § 1983. See *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In addition, Count V of the complaint specifically alleges deprivation of federal constitutional rights and incorporates all of the allegations in the previous counts. Thus, the case was properly removed based upon the federal claims appearing on the face of the complaint, which alleged causes of action over which the district court would have had original jurisdiction. The district court also properly exercised supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arose from the same occurrence that formed the basis of the federal claims.

## B.

As noted, on January 7, 1993, attorney Brandy, representing Mrs. Green as personal representative of the Malice Green estate, and attorney Quinn, representing the City of Detroit, filed a "Stipulation to Dismiss Action without Prejudice and without Costs." The stipulation stated that the "[t]he plaintiff and the defendant City of Detroit, the only defendant that has been served, stipulate to entry of the dismissal pursuant to FRCP 41(a)(1)." After substantial briefing, the district court noted that courts addressing Rule 41(a)(1)(ii) motions "have routinely looked to 'parties in interest' beyond those named in the case caption." The court then rejected the argument that the co-personal representatives were the only "parties who have appeared in this case," and found the putative stipulation defective because "all the parties who have appeared in the action" did not sign the stipulation. Alternatively, the court also found that counsel, by their actions, had waived the right to a Rule 41(a) dismissal. The court also stated that it exercised its inherent power to deny dismissal. We need not consider the waiver argument, as we conclude that the district court correctly found that the motion was not signed by all the parties who had appeared in the action and acted well within its inherent power in refusing to permit dismissal under the circumstances of this case.

■ Rule 41(a)(1) provides, in pertinent part:

(a) Voluntary Dismissal: Effect Thereof.

(1) By plaintiff; by Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal *signed by all parties who have appeared in the action.* (emphasis added).

At the time the January 7, 1993 stipulation was filed, the following attorneys had entered appearances: Brunetta Brandy, attorney for personal representative Rose Mary Green; Ernest L. Jarrett, co-counsel for personal representative Rose Mary Green; Gerald Thurswell, attorney for Edniquech Grubbs and several claimants; Justin Ravitz, attorney for the decedent's parents, three sisters, and maternal grandmother; John P. Quinn, attorney for the City of Detroit; Brenda Braceful, attorney for the City of Detroit. An additional attorney, John Phebus, had contacted the court regarding his representation of Kim Nihiser, mother and next friend of Jacqueline Dennison, a minor child of the decedent. Mr. Phebus filed a formal notice of appearance on January 14, 1993. Although Ms. Brandy claims to have been the attorney for Edniquech Grubbs at the time the stipulation was filed, Mr. Thurswell's motion to withdraw as counsel had not yet been granted and he was still Ms. Grubbs's counsel of record.

Attorneys Brandy and Jarrett contended that because Ms. Brandy represented the estate and Mr. Quinn the city, the stipulation was signed by all the parties. Rejecting this argument, the district court looked beyond the case caption and considered the next of kin who would share in a wrongful death judgment or settlement to be "parties who had appeared in the action" because of their interest in the outcome of the case and inability to assert their claims on their own behalf. Inasmuch as the attorneys representing their interests did not sign the stipulation and because Mr. Thurswell did not sign, the court determined that the stipulation did not effect a Rule 41(a)(1) dismissal. The court rejected the argument that because only a personal representative may bring an action for wrongful death under Michigan law, M.C.L.A. § 600.2922(2), the heirs and next of kin of Malice Green were only "interested persons," not proper parties in the removed action. As stated, we agree with the district court's ruling and reasoning.

■ The appellants also challenge the district court's resort to its inherent power in refusing to give effect to the stipulated dismissal. They contend that Rule 41(a)(1), unlike Rule 41(a)(2), which contemplates the exercise of judicial discretion and requires a court order to effectuate dismissal, operates automatically and allows parties to withdraw

an action from federal court for any reason. While a properly stipulated dismissal under Rule 41(a)(1)(ii) is self-executing and does not require judicial approval, *Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir.1993); *Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993, 995–96 (6th Cir.1987), a court may decline to permit a voluntary dismissal when required to avoid short-circuiting the judicial process, or to safeguard interests of persons entitled to the court's special protection. Thus, a "court, exercising its inherent powers, may look behind it [a settlement] to determine whether there is collusion or other improper conduct giving rise to the dismissal." *United States v. Mercedes–Benz of North America*, 547 F.Supp. 399, 400 (N.D.Cal.1982). See also *Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88 (2d Cir. 1974) (court has inherent power to vacate a voluntary discontinuance where counsel dismissed an action without client's consent); *Crawford v. Loving*, 84 F.R.D. 80, 87 (E.D.Va.1979) (a construction of Rule 41(a)(1)(ii) depriving "a person under a disability of the protection of the Court is highly unjust" and should not be followed).

■ At least one claimant—Jacqueline Dennison—was a minor and thus under a disability, and her attorney did not sign the stipulation. Even if the attorney had signed the stipulation on behalf of Jacqueline's mother and next friend, the court would have been remiss if it had not made an independent determination that the settlement was in the minor's best interest. *Crawford v. Loving* is persuasive. That case involved the settlement of a civil rights action brought under 42 U.S.C. § 1983 by a state prisoner against prison officials. The prisoner was legally incompetent and his next friend joined with the defendants in a stipulated dismissal pursuant to Rule 41(a)(1)(ii). In refusing to give effect to the stipulation, the court stated:

> Logic joins the law in compelling the conclusion that an incompetent person's suit cannot be ended upon settlement followed by the filing of a stipulation of dismissal. It is only when a settlement occurs that the Court's duty to oversee the settlement arises. If that duty could be aborted by the filing of a stipulation, the role of the Court would be effectively avoided. Neither law nor logic sanction such a result.

84 F.R.D. at 87.

Beyond these considerations is the fact that the Michigan Wrongful Death Act requires a settlement to be approved by the trial court as a safeguard to protect the interests of the claimants. M.C.L.A. § 600.2922(5). The "named" parties should not be permitted to circumvent the approval process by stipulation. The district judge's refusal to give legal effect to the stipulation, when he was aware that at least two attorneys, Phebus and Ravitz, one of whom represented a minor claimant, had voiced objection to the stipulation on behalf of their clients was entirely proper.

We conclude that the district court did not abuse its broad discretion and properly exercised its inherent power to determine whether the stipulation of dismissal should be given effect.

### C.

■ Attorneys Brandy and Jarrett argue that the district court was bound to award them an attorney fee of one-third of the estate's recovery in accordance with a contingent fee agreement. They rely on the fact that three days after Malice Green's death, Ms. Brandy wrote separate letters to Mrs. Green and Ms. Grubbs outlining the terms of her representation and that each of the addressees signed one of the letters acknowledging and agreeing to the terms. Neither letter specifically referred to the addressee as a personal representative of the estate. Rather, the letters appear to have been addressed to Mrs. Green and to Ms. Grubbs individually and to have been acknowledged and agreed to by them as individuals rather than as personal representatives. Since both addressees would have shared individually in any recovery by the estate as widow and daughter of the decedent, the letter agreements on their face do not bind the estate. The letters refer to a fee computed "on the net sum recovered by you." Nothing in the letters indicates that the estate is to pay Ms. Brandy a fee.

Even if the letter to Ms. Grubbs is construed as referring to her as an estate representative, it raises several questions. In the first place, the complaint recites that Rose Mary Green was the duly appointed personal representative of the estate. She is the only plaintiff and only personal representative named in the complaint; there is no mention of Ms. Grubbs. Further, when Ms. Grubbs first surfaced as "co-personal representative," her appearance was entered by Mr. Thurswell, not by Ms. Brandy. If Ms. Grubbs was appointed co-personal representative at the time the complaint was filed, she should have been a plaintiff. If she had not been appointed at that time, the agreement that she signed as co-personal representative was a nullity.

Faced with these discrepancies and noting the obvious haste with which attorney Brandy moved, the court naturally proceeded cautiously in dealing with the fee agreement. Further, although the court was aware of only one minor claimant at the time it rejected the contingent fee agreement, before the distribution order was entered two other minor claimants—grandchildren of Malice Green—had appeared. Because Michigan law requires co-personal representatives to act jointly to bind an estate, *Action Auto, Inc. v. Anderson*, 165 Mich.App. 620, 419 N.W.2d 36 (1988), and the co-personal representatives did not jointly sign any fee agreement, the court found no valid fee agreements between the estate and any lawyer.

■ There are many reasons for upholding the district court's rejection of the contingency fee agreement. In the first place, it is not at all clear that the co-personal representatives acted jointly, a requirement of Michigan law, in attempting to bind the estate to a contingent fee agreement. More compelling, however, is the rule that a contract for contingent fees "should always be subject to the supervision of a court, as to its reasonableness." *Krause v. Rhodes*, 640 F.2d 214, 219 (6th Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981). Courts have broad authority to refuse to enforce contingent fee arrangements that award excessive fees. A fee can be unreasonable and subject to reduction without being so "clearly excessive" as to justify a finding of breach of ethical rules. *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97, 100 (3rd Cir.1985). Moreover, "[w]hen a court is called on to approve ... [a settlement involving a minor], it must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988). Minors' interests are subject to the court's protection. *Id.; Centala v. Navrude*, 30 Mich.App. 30, 32–33, 186 N.W.2d 35 (1971).

The court in *Krause v. Rhodes*, also an action under 42 U.S.C. § 1983, described the trial court's authority to fix attorney compensation and prescribed a limited standard of review:

A federal district judge has broad equity power to supervise the collection of attorneys' fees under contingent fee contracts. As has often been stated,

where an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court having jurisdiction of the subject matter of the suit has power to fix the attorney's compensation and direct its payment out of the fund.

*Garrett v. McRee*, 201 F.2d 250, 253 (10th Cir.1953), *quoted in Cappel v. Adams*, 434 F.2d 1278, 1279 (5th Cir.1970). Further, "[t]he sum determined to be a reasonable attorney's fee is within the discretion of the district court; before a reviewing court should disturb the holding there should be a clear showing that the trial judge abused his discretion." *Cappel v. Adams, supra*, at 1280. Thus, an attorney's right to contract for a contingent fee is not completely beyond judicial control.

640 F.2d at 218 (footnote omitted). See also *United States ex rel. Taxpayers Against Fraud v. General Electric*, 41 F.3d 1032, 1047 (6th Cir.1994) ("an attorney's right to contract for a contingent fee is not completely beyond judicial control." (quoting *Krause* )); *Kalyawongsa v. Moffett*, 105 F.3d 283, 286 (6th Cir.1997) ("federal district

'judges have broad equity power to supervise the collection of attorneys' fees under contingent fee contracts.' " (quoting *Krause* )).

■ In its order setting the appellants' fees the district court applied the factors set forth in the Michigan Rules of Professional Conduct and carefully analyzed each factor in light of the information furnished by the appellants. Neither appellant supplied the court with detailed records of the time spent on the case. Ms. Brandy claimed she spent 60% of her time on the case between November 1992 and August 1993. The district court gave her the benefit of that estimate, crediting her with 865 hours. Mr. Jarrett was "confident that [he] devoted hundreds, perhaps as many as 1,000 hours, to the case." The district court credited him with 700 hours. Despite this generous treatment of very sketchy demonstrations of hours expended, the appellants make multiple arguments that the fees awarded are too low. We disagree.

The record reflects that the City of Detroit offered the $5.25 million settlement less than three weeks after the filing of the complaint, motivated, at least in part, by the public outcry attendant to the death of Malice Green. The estate achieved a valuable result for Malice Green's survivors, but that value arose more from the notoriety of the case than from the effort of either Mr. Jarrett or Ms. Brandy. Attorney Brandy argues that the district court erred in finding that the case presented no novel or difficult questions of law relating to the City's municipal liability. This contention is patently meritless given a wealth of Supreme Court cases relating to the issue, the frequency with which police brutality suits are brought, and the City of Detroit's quick settlement offer.

The appellants have completely failed to demonstrate that the district court abused its discretion either in rejecting the contingent fee agreement or in setting the amount of *quantum meruit* attorney fees to be paid from the settlement.

**D.**

Several of the attorneys made motions at various stages of the proceedings seeking to have Judge Rosen disqualify himself. They relied on both 28 U.S.C. § 144 and 28 U.S.C. § 455.[1]

Judge Rosen, noting that §§ 144 and 455 are to be read *in pari materia, Easley v. University of Michigan Board of Regents,* 853 F.2d 1351, 1355 (6th Cir.1988), and that motions brought under both sections are entrusted to the sound discretion of the trial court, *In re M. Ibrahim Khan, P.S.C.,* 751 F.2d 162, 165 (6th Cir.1984), found that he was not required to transfer the motions to another judge and that the motions were wholly without merit. The court observed that disqualification under both § 144 and § 455 must be predicated "upon extrajudicial conduct rather than on judicial conduct," *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir.1983)(*quoting City of Cleveland v. Krupansky,* 619 F.2d 576, 578 (6th Cir.), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980)), and upon "a personal bias 'as distinguished from judicial one,' arising

---

1. 28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such a time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 455 provides:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . .

'out of the judge's background and association' and not from the 'judge's view of the law.'" *Id.* at 1090 (*quoting Oliver v. Michigan State Board of Education,* 508 F.2d 178, 180 (6th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975)). The court also found one of the motions to be untimely.

We agree with the district court's conclusions. There is no evidence of bias in this record. There is evidence of impatience with attorneys whose legal work was at times shoddy, and who spent a great deal of time quarreling among themselves. The court also displayed a natural skepticism when asked to seal the record of a case in which the city offered to pay a large sum of money within a few weeks of the incident giving rise to the lawsuit before conducting any discovery. This skepticism was further aroused by the fact that the proposed settlement, reached at a time when the only legal work by plaintiff's counsel consisted of an unexceptional complaint, provided for an attorney fee of $1.7 million to be paid to Ms. Brandy and her fee-sharing associate, Mr. Jarrett.

The conclusory and unsubstantial allegations in the motions to disqualify Judge Rosen required no action other than the response given in the orders denying these motions.

The judgment of the district court is **AFFIRMED.**