**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0591n.06

No. 09-5379

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel, Bringing This Action on Behalf of The United States of America; DENNIS LEFAN, Bringing This Action on Behalf of The United States of America; JASON GIBSON, Bringing This Action on Behalf of The United States of America; HAROLD DILBACK; J. KEITH LAX; L. ELSWORTH CRANOR; CONNIE SUE ORTEN; JEFF ASHBY, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs and Relators, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| HELMER, MARTINS, RICE & POPHAM CO., L.P.A., | ) ) ) | |
| Appellant, | ) ) | **OPINION** |
| v. | ) ) | |
| GENERAL ELECTRIC COMPANY; PRECISION CASTPARTS CORPORATION; ALCOA, INCORPORATED, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| PRIDDY, CUTLER, MILLER & MEADE, PLLC; VOLKEMA THOMAS, LPA, | ) ) ) | |
| Appellees. | ) ) | |

Before: RYAN, COOK, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Three firms represented a group of Relators in a

False Claims Act ("FCA") suit against General Electric Aircraft Engines ("GEAE"), and in

related retaliation suits. After settlement of the claims, the Relators received roughly $2.5 million. Pursuant to a contingency-fee agreement, the Relators paid just over $1 million in contingency fees. Because the law firms could not agree on the apportionment of those fees between them, the district court assumed jurisdiction and apportioned the fees. One of the law firms appeals, and we affirm.

# I

The Kentucky law firm of Priddy, Cutler, Miller & Meade ("the Priddy firm")[1] represented a group of Relators in an investigation of alleged substandard manufacturing of jet-engine components produced by GEAE for use in military aircraft. In October 2000, the Relators filed an FCA action against GEAE in the United States District Court for the Western District of Kentucky. In 2002, the Priddy firm approached Helmer, Martins, Rice & Popham ("the Helmer firm"), an Ohio firm specializing in FCA claims. The two firms entered into a Co-counsel Agreement ("Agreement") that provided, *inter alia*, that the two firms would share equally in a forty-percent contingency fee.[2] The firms also agreed on the procedure for involving additional counsel, if it proved necessary. The firms obtained the Relators' consent to the Agreement.

After the Agreement, Helmer-firm partner Frederick Morgan, Jr., led the effort on the FCA claim and was the primary contact for the Relators. In January 2005, Morgan, along with

---

[1]The names of the three firms involved in this dispute have changed over the course of the controversy. For clarity, we refer to the firms by their names as of the filing of the instant action.

[2]This equal split only applied to the contingency fee paid by the Relators pursuant to their agreement with counsel. The Agreement expressly provided that each firm was entitled to retain any statutory attorney fees awarded by the court or obtained in settlement. As discussed in the companion case, No. 08-5216, substantial attorney fees were awarded by the court to the three firms, based on their actual work and expenses.

paralegal Mary Jones, left the Helmer firm to join another Ohio firm, Volkema Thomas ("the Volkema firm"). The Relators expressed a strong desire that Morgan continue to represent them. At the Priddy firm's urging, the Relators did not conclude the Helmer firm's representation, and the firm remained as co-counsel, though in a limited capacity. Thereafter, the Helmer and Volkema firms engaged in a series of negotiations to determine how the Volkema firm would be compensated. Discussions centered on the division of the Helmer firm's half of the contingency fee. The firms were unable to reach an agreement, and although Morgan continued to perform the majority of work on the case, the Volkema firm had neither an agreement with the other two firms, nor one with the Relators.

The United States intervened in the case in July 2006 and an $11.5 million settlement of all FCA claims was reached a month later. The Relators' share of the settlement was paid into the Priddy firm's non-interest-bearing escrow account. The Relators signed an agreement allowing the distribution of the funds, including a distribution of one-half of the contingency fee to the Priddy firm, and the other half to the Helmer and Volkema firms jointly. The Helmer firm objected to its share being divided with the Volkema firm. After an unsuccessful attempt to submit the dispute to arbitration by the Ohio State Bar Association, the Volkema firm filed a motion in the district court for acceptance of supplemental jurisdiction to resolve the dispute. The district court accepted jurisdiction and granted the Priddy firm's motion to interplead $517,000. The court referred the matter to a magistrate judge, who found that absent an agreement, Kentucky law regarded the Helmer firm and the Volkema firm as engaged in a "special partnership," and that their half of the contingency fee should be divided equally between the two

3

firms.  The district court adopted the magistrate judge's recommendation without modification.[3]
The Helmer firm appeals.

## II

This court reviews a district court's award of attorneys' fees for abuse of discretion. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007); *see also Kalyawongsa v. Moffett*, 105 F.3d 283, 289 (6th Cir. 1997).  "The district court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 435 (6th Cir. 2008) (internal quotation marks omitted).  Abuse of discretion is "defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009) (quoting *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001)).

## III

The Helmer firm first challenges the district court's assumption that the dispute concerns only the interpled, one-half share of the total contingency fee.  It claims that under the Agreement any award to the Volkema firm must be paid in equal parts from the awards to the Helmer firm and the Priddy firm.  We disagree.

The Agreement states, in relevant part:

**B. Costs And Expenses**
. . .
(3.) The parties agree that the scope of the case and necessary discovery may expand to such an extent that it is prudent to involve another firm in the litigation. Should the parties mutually agree to associate with another firm, the parties will agree to a percentage of the total Relators' share of the contingency which will be

---

[3]Because the district court adopted the report and recommendation of the magistrate judge without alteration, we refer to the report as the findings of the district court.

designated to the third firm, and the contingency fee shares of both [the Priddy firm] and [the Helmer firm] shall be reduced equally to account for that portion being allocated to the third firm.

The Priddy and Volkema firms assert that the first sentence and the first clause of the second sentence express a condition precedent to the application of the fee-splitting provision of the second sentence; i.e., a contingency fee paid to a third firm is to be drawn equally from the Priddy and Helmer firms' shares only if the Priddy and Helmer firms chose to associate with a third firm due to the expanding scope of the FCA action. They argue that because this did not occur, the Helmer firm's reliance on paragraph 3 is misplaced.

"[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court[.]" *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation and internal quotation marks omitted). Because the firms did not agree that the scope of the case and necessary discovery had expanded to the extent that it was prudent to involve another firm, the Agreement is at best ambiguous regarding paragraph 3's application here. Because there is no other contract language addressing the situation, if paragraph 3 does not apply, the Agreement is silent regarding the contingency-fee split when a third firm is brought in for reasons other than the scope of the litigation. In either case, the court may appropriately look to the surrounding circumstances, and the Priddy and Volkema firms' interpretation of the contract is most consistent with the facts and the parties' conduct. *See, e.g.*, *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) ("Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties.") (citations omitted).

Here, the record supports the magistrate judge's detailed findings that when Morgan left the Helmer firm, the Relators clearly expressed their desire that he remain in charge of their representation; that it was only at the Priddy firm's urging that Relators agreed that the Helmer firm would continue as a counsel of record, but would do so only on a limited basis; that the Volkema firm was, in effect, the successor to the Helmer firm in its role as primary representative of the Relators; and that the parties' conduct and negotiations at the time make clear that none of the firms took the position that paragraph 3 of the Agreement applied, and all assumed that whatever the resolution between the Helmer firm and the Volkema firm, the Priddy firm's share would not be affected.

In the negotiations between the Helmer firm and the Volkema firm over the Volkema firm's compensation, it was assumed that the Priddy firm would keep its one-half share of the contingency fee. The Helmer firm itself proposed that the second half of the contingency fee be divided into thirds, with one-third to the Volkema Firm, one-third to the Helmer Firm, and the final one-third divided according to the work performed by the two firms. At no point did any proposal contemplate the Priddy firm receiving less than half of the contingency fee. The Helmer firm focuses on its insistence during negotiations that all share equally in the expenses, asserting that this requirement was a *quid pro quo* for the 50% allocation to the Priddy firm, but nothing other than argument supports this interpretation of the negotiations.

In short, it is abundantly clear that the parties treated the Volkema firm as a successor to the Helmer firm, not as a third firm. The actions and negotiations of the parties evince a mutual intent that the Volkema firm be compensated out of the Helmer firm's portion of the contingency fee. The district court did not err in concluding that only the interpled funds were at issue.

## IV

The Helmer firm next challenges the district court's 50-50 apportionment of the Helmer firm's one-half share of the contingency fee on the basis that the Helmer and Volkema firms were involved in a "special partnership" under Kentucky law, requiring an equal division of contingency fee. The Helmer firm argues that the "special partnership" theory is inapplicable on these facts, that the theory is no longer viable because the Rules of Professional Conduct control, and that the resulting distribution is inequitable.

### A

The Helmer firm argued to the magistrate judge that because the Volkema firm had no written contract with the Relators, the Volkema firm was not entitled to any portion of the contingency fee, and was entitled only to the statutory attorney fees awarded by the district court, which adequately compensated it for its time. After rejecting the Volkema firm's arguments based on an implied-in-fact contract and *quantum meruit*, the magistrate judge turned to the Volkema firm's argument based on *Underwood v. Overstreet*, 223 S.W. 152 (Ky. Ct. App. 1920), and concluded that the Helmer and Volkema firms acted as "special partners," and were each entitled to one half of the fee.

The Helmer firm urged the district court to reject the magistrate judge's recommendation, arguing, *inter alia*, that *Underwood* is inconsistent with the Kentucky Rules of Professional Conduct, adopted subsequent to *Underwood*. The district court adopted the magistrate's decision without discussion.

### B

When applying state law, federal courts "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d

323, 326 (6th Cir. 2000) (citation omitted). "If the state supreme court has not yet addressed the issue presented, we must predict how that court would rule, by looking to 'all available data.'" *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) (quoting *Kingsley Assocs. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)).

In *Underwood*,[4] two attorneys jointly represented a client in a tort action under a contingency-fee agreement. The client had agreed to pay one-half of any settlement from a trial to the two attorneys, but there was no agreement between the attorneys as to the division of the fees. A dispute followed, and the Kentucky Court of Appeals held:

> Where attorneys jointly undertake to represent a client for . . . a sum equal to a given per cent. of the amount of the plaintiff's recovery, with no agreement between themselves as to the amount each shall receive in the division of the fee, each lawyer takes half. Such arrangement is a special partnership, or a partnership for a special purpose.

*Underwood*, 223 S.W. at 154.

The facts of *Underwood* are not on all fours. In *Underwood,* the first attorney sought out a more experienced attorney to assist on the case. The client signed a written agreement employing both attorneys, with only the precise division of the fee omitted. Here, there was no written agreement with the clients—although the Relators were fully aware and supportive of Morgan continuing to serve a primary role in their representation—and the Helmer and Volkema firms did not seek each other out to form a partnership. Rather, the Volkema firm in effect succeeded the Helmer firm in representing the Relators when Morgan changed firms. However, if still viable in the face of the Rules of Professional Conduct, *Underwood* remains useful as "data" for predicting

---

[4]*Underwood* is a decision of the Kentucky Court of Appeals, the only appellate court in Kentucky at the time. The Kentucky Supreme Court was created in 1975 and adopted prior decisions of the Court of Appeals as binding precedent. Ky. S.C.R. 1.040(5).

how the Kentucky Supreme Court would rule.  The Helmer firm argues that *Underwood* is no longer viable.

Kentucky Supreme Court Rule 3.130(1.5) governs fee divisions and states, in part:

(e) A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the division is in proportion to the services performed by each lawyer, or, each lawyer assumes joint responsibility for the representation;
> (2) the client agrees to the arrangement and the agreement is confirmed in writing; and
> (3) the total fee is reasonable.

This is not necessarily in conflict with *Underwood*.[5]  The plain language of the Rule nowhere mandates proportionate division of fees.[6]  Rather, it establishes such a division as one of two acceptable methods for attorneys to divide fees.  Under the Rule, attorneys may either divide fees proportionately or assume joint responsibility for the representation.  The Kentucky Supreme Court Commentary adopted in 2009 clarifies that "[j]oint responsibility for the representation entails financial and ethical responsibility for the representation as if the lawyers were associated in a partnership." Ky. S.C.R. 3.130(1.5), Supreme Court Commentary, at ¶(7) (2009).  This, too, is useful "data."

---

[5]In *Underwood*, all of the requirements of the Rule appear to have been met.  The agreement with the clients established both attorneys as responsible for the prosecution of the client's case, the client agreed in writing to the arrangement, and the overall fee charged—a 40- to 50-percent contingency fee depending on whether the case went to trial—was not determined to be unreasonable.

[6]The Helmer firm argues that our unpublished decision in *Carter v. Hofler-Saunders*, 2003 U.S. App. LEXIS 24842, at *8, No. 01-6480 (6th Cir. Nov. 26, 2003) recognizes that Rule 1.5(e) mandates proportional division.  That case did not address *Underwood* and did not hold that there could not be an equal division.  Rather, the court remanded because the district court cited only to Rule 1.5(e), but did not explain how the rule was applied.

C

The Helmer firm argues that a 50-50 split in the instant case violates Rule 1.5(e), because there was no written agreement with the Relators with regard to the division of a fee between the Helmer and Volkema firms. The concerns driving Rule 1.5(e), however, are not present here. The Rule is based on the ABA Model Rules, and its purpose is to strike a balance between the benefits and potential for abuse in attorney referrals, or "case brokering." *See, e.g.*, KY. BAR ASS'N, Ethics Opinion KBA E-366 (June 1994) ("The idea underlying [Rule 1.5(e)] seems to be that responsible brokering is in the client's interests - it gets the case into competent hands by eliminating the economic disincentive to referral."); *accord Pumphrey v. Empire Lath & Plaster*, 144 P.3d 813, 817 (Mont. 2006) (holding that ABA Model Rule 1.5(e) "has no application in this case where no concerns exist regarding the evils [of client brokering] that the ABA designed Rule 1.5(e) to prevent.") (citation omitted).

The Relators in the instant case have not been "brokered" by one firm to another; rather, they chose to continue to be represented by an attorney who changed firms. It is clear that the Relators were at all times aware, and in control, of which firms were representing them, and what roles they were playing. Their communications demonstrate that they consented to Morgan's continued representation as a member of the Volkema firm and to the Helmer firm remaining in a limited role. It is clear that they intended that Morgan would share in the contingency fee. Thus, the relationship did not violate the Rules of Professional Conduct.

D

Under the circumstances, we find no error in the district court's apportionment. Although the Helmer firm seeks to recast on appeal its position below, the record makes clear that the Helmer firm argued that absent an agreement, the Volkema firm was entitled to no share of the contingency

fee; it further argued that *quantum meruit* did not apply because services were rendered to the Relators, not to the Helmer firm, and Volkema had already been awarded *quantum meruit* through the statutory attorney fee award. When the Volkema firm argued for a contract implied-in-fact, for a *quantum meruit* award based on a doubled lodestar because of the value of its work, and for a joint venture under *Underwood,* the Helmer firm responded to these arguments, but never suggested a division of the contingency fee that would involve the Volkema firm receiving any share at all. Regarding *Underwood*, the Helmer firm argued that the case is inapplicable because the Helmer and Volkema firms never agreed that the Volkema firm would share in the contingency fee, and the Volkema firm had never before made a claim to half the fee.

Not surprisingly, the magistrate judge addressed the issues as framed by the parties. It accepted the Helmer firm's arguments against finding a contract implied-in-fact and awarding a fee based *quantum meruit*, but found *Underwood* applicable because the facts supported that the Helmer and Volkema firms had agreed to split the contingency fee, but could not agree on an apportionment.

It was only after the magistrate judge issued the recommendation that the Helmer firm first asserted the applicability of the Rules of Professional Conduct and first argued for an apportionment based on services rendered.[7] The Volkema firm responded asserting that the magistrate judge correctly concluded that the firms had agreed to share the contingency fee, although the shares remained undecided; and that Rule 1.5(e) did not overrule *Underwood*, does

---

[7]A split based solely on the lodestar awards of the district court would have resulted in the Volkema firm receiving just shy of 28% of half the contingency fee. The Helmer firm's award was $1,011,059.25 and the Volkema firm's award was $386,285.05. The total is $1,397,344; $386,285 is 27.64% of $1,397,344.

11

not require proportional distribution in the instant case, and should not be subverted to effect an unfair result.

We find no error in the district court's adoption of the magistrate judge's findings of fact and conclusions of law. There is no dispute that the Helmer and Volkema firms both agreed that the Volkema firm would assume the representation of the Relators after Morgan left the former for the latter. Notwithstanding the Helmer firm's protestations to the contrary, it is also clear that the firms agreed that there would be some apportionment between them of the 50% share of the contingency fee. They could not, however, agree whether an unequal split would be based on the total hours each firm spent on the case, the hours spent after Morgan's departure, or some other formula. The district court's decision necessarily took these unassailable facts into account. In this context, and in light of the firms' arguments, it is consistent with both *Underwood* and Comment 7 to Rule 1.5(e) to conclude that in the absence of an agreement to the contrary, the Helmer and Volkema firms were entitled to share equally in one-half of the contingency fee.

E

Finally, the Helmer firm argues that it is simply inequitable to equally divide the interpled portion of the contingency fee because it would result in the Helmer firm receiving only 25% of the total contingency fee, despite expending more time on the case than the Priddy and Volkema firms combined. We cannot agree. The Priddy firm received 50% of the fee based on the express Agreement between the Helmer and Priddy firms. This agreement did not violate Rule 1.5(e) because both firms assumed joint responsibility for the case and the Relators approved the Agreement. Thus, the focus must remain on the apportionment between the Helmer and Volkema firms.

12

Further, each firm remained entitled to statutory attorney fees and cost reimbursements, which were awarded separately by the district court. *See United States ex rel. LeFan v. Gen. Elec. Co.*, No. 4:00-CV-222, 2008 WL 152091 (W.D. Ky., Jan. 15, 2008) (unpublished). The Helmer firm had expended the most time, 4,416.45 hours, at a lodestar amount of $1,011,059.25, and had incurred the greatest expenses, $77,426.68; the Priddy firm devoted 2,349.45 hours, at a lodestar amount of $670,782.50, and incurred expenses of $25,366.66; and the Volkema firm expended 1817.86 hours, at a lodestar amount of $386,285.05, and incurred expenses of $23,955.82. The contingency-fee award was in addition to these fees.

To be sure, a strong argument can be made that because the Helmer firm expended more hours overall in representing the Relators, it is entitled to a greater share of the contingency fee. But an equally strong argument can be made that the original co-counsel Agreement between the Priddy and Helmer firms contemplated that actual hours worked would be compensated through the statutory attorney fee awards, while the firms' joint representation and joint responsibility would be compensated through a 50-50 split of the contingency fee, regardless of hours contributed to the effort. After Morgan left the Helmer firm and joined the Volkema firm, those two firms occupied the role that the Helmer firm had previously filled alone. Morgan assumed primary responsibility for the case and continued to serve as lead contact for the Relators, and the Helmer firm remained as co-counsel only because of Priddy's advocacy in its behalf. Indeed, it appears that the Volkema firm incurred the bulk of the expenses from that time forward. Because the Helmer firm was never entitled to a proportionate share of the contingency-fee award and the firm's hours were accounted for in the statutory award, the 50-50 split was not inequitable.

13

## V

Last, the Helmer firm argues that the district court erred in applying the "special-relationship" doctrine to the Helmer/Volkema relationship without also applying it to the Priddy firm. The short answer is that the facts surrounding the Priddy firm's relationship with the Helmer and Volkema firms differ from the facts surrounding the Helmer/Volkema relationship. The Priddy and Helmer firms agreed to a fifty-fifty split, and the Volkema firm was regarded by all as continuing to act in discharge of the Helmer firm's undertakings under the Agreement.

## VI

For the foregoing reasons, we **AFFIRM** the decision of the district court.