**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2258
_____

CHANDER KANT,
Appellant

v.

SETON HALL UNIVERSITY;
KOUSOULAS & ASSOCIATES

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-00-cv-05204)
District Judge:  Honorable Dennis M. Cavanaugh

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 8, 2011

Before:  FUENTES, GREENAWAY, JR. and ROTH, Circuit Judges

(Opinion filed: April 8, 2011)

_____

OPINION
_____

PER CURIAM

Chander Kant appeals pro se from several orders entered by the United States

District Court for the District of New Jersey.  For the reasons that follow, we will affirm

the district court's orders.

I.

In October 23, 2000, this litigation commenced in the United States District Court for the District of New Jersey when Kant filed a pro se complaint, alleging that his employer, Seton Hall University, discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Thereafter, on February 23, 2001, Kousoulas and Associates, P.C., entered into a retainer agreement with Kant whereby it agreed to represent him and Kant agreed to pay a fee of $15,000 plus either 20 percent of any recovery, or attorneys' fees as awarded by the court.

Although many of Kant's claims against Seton Hall were dismissed, his retaliation claim proceeded to trial. He obtained an $80,000 judgment, which was entered on April 11, 2006. Kousoulas, with Kant's assent, filed an application for costs and attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k). However, Kant discharged Kousoulas prior to the fee petition hearing. Kousoulas thereafter filed a motion to intervene to protect its interest in the attorneys' fees. At the July 2006 fee petition hearing, Kant's new counsel argued for a reduction in the amount to be awarded, but stated that Kant did not otherwise object to the fee application.[1] On July 18, 2006, the district court awarded counsel fees of $124,834.95 and costs of $2,595.41. The July 18th order also denied Kousoulas's motion to intervene, stating that "an attorney, independent of his or her client, has no personal right to an award of statutory attorneys' fees." The district court did note,

_____

[1] Kant discharged his second attorney in October 2006.

2

however, that "plaintiff's former attorneys may have a separate claim pursuant to the retainer agreement entered into with plaintiff for their fees."

Seton Hall and Kant appealed from the April 11, 2006 judgment, which this Court affirmed on May 29, 2008. (C.A. Nos. 06-4448 & 06-4464.) Seton Hall then paid to Kant the $80,000 judgment and deposited the fee award with the district court. Seton Hall is no longer part of the litigation.

Soon thereafter, because Kant refused to authorize payment of the fee award to Kousoulas, Kousoulas sent to Kant a fee arbitration notice pursuant to New Jersey Court Rule 1:20A-6. When Kant did not commence fee arbitration proceedings, Kousoulas filed a petition in the district court for determination and enforcement of an attorney fee lien pursuant to New Jersey law. On January 27, 2009, Kant filed an answer to the fee lien petition as well as a counterclaim against Kousoulas, asserting claims of legal malpractice and tortious interference with prospective economic advantage.

On March 30, 2009, the district court dismissed Kant's tortious interference claim as time-barred. And on September 9, 2009, the district court granted Kousoulas's motion for summary judgment as to its attorney fee lien and its motion to dismiss Kant's legal malpractice claim. The September 9th order also denied as moot Kant's motion for default judgment. Kousoulas then filed a motion for release of the funds, and Kant moved for reconsideration of the September 2009 order. On March 30, 2010, the district court granted Kousoulas's motion and denied Kant's motion for reconsideration.

3

Kant now appeals from the district court's March 30, 2009, September 9, 2009, and March 30, 2010 orders.[2]

## II.

## A. SUMMARY JUDGMENT AS TO THE FEE LIEN PETITION

On September 9, 2009, the district court granted Kousoulas's motion for summary judgment as to its fee lien petition after determining that the retainer agreement, which stated that fees awarded are to be paid to Kousoulas, was an enforceable contract.[3] We exercise plenary review over a district court's conclusions of law and review its findings of fact for clear error. *See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003). In doing so, we employ the same standard used by the district court in deciding a motion for summary judgment. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

As the district court recognized, in New Jersey the relationship between an attorney and client is contractual. *See Cohen v. Radio-Electronics Officers Union*, 679

---

[2] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[3] We note that the district court properly exercised supplemental jurisdiction over the fee dispute. *See Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir. 1997) (holding that "although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action"); *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 217-18 (3d Cir. 1987).

4

A.2d 1188, 1196 (N.J. 1996) ("Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics."). And in determining that Kousoulas's fee lien petition should be enforced, the district court explained that:

> The facts of record establish that Petitioner has rendered legal services to Kant pursuant to the Retainer Agreement. As a result of these services, Kant obtained a damages award of $80,000.00. Additionally, Kant and Petitioner filed a fee application and the Court granted said application. The facts presented establish that Kant agreed to turn over any fees awarded by the Court to Petitioner. The fees are to be paid by Seton Hall University, and, therefore, there is no loss incurred by Kant. Kant has provided neither legal authority nor facts to support his position that he does not have to turn over the fees awarded to Petitioner.

Kant asserts that the district court made several erroneous findings of fact in making its decision, including that he "agreed to turn over any fees awarded by the Court to [Kousoulas]." In support, he references several statements that he made regarding his continuing assertion that he, not Kousoulas, should be awarded attorney's fees. However, the district court's finding is correct, as Kant agreed "to pay [Kousoulas] twenty percent (20%) of the sum recovered, . . . or any legal fees awarded to [Kousoulas] by the Court, whichever is greater," when he signed the retainer agreement.

Further, although Kant correctly asserts that "courts scrutinize contracts between attorneys and clients to ensure that they are fair," *Cohen*, 679 A.2d at 1196, he does not argue that the retainer agreement itself is unfair or unethical. Rather, Kant's primary argument appears to be that Kousoulas should not be awarded fees because Kant is likely to succeed on his counterclaims. However, Kant's success or failure on his

5

counterclaims has no bearing on the fee award paid by Seton Hall to Kousoulas pursuant to the retainer agreement.

Moreover, despite Kant's argument to the contrary, he is not eligible for the attorney fee award under 42 U.S.C. § 2000e-5(k), as it is well-established that, "[s]ince the object of fee awards is not to provide a windfall to individual plaintiffs, fee awards must accrue to counsel." *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977) (receded from on other grounds in *Kunda v. Muhlenberg Coll.*, 621 F.2d 532 (3d Cir. 1980)).

Kant's remaining arguments are meritless. Therefore, we will affirm the district court's orders granting Kousoulas's motion for summary judgment as to its fee lien petition and denying Kant's motion for reconsideration of that decision.

## B. DISMISSAL OF KANT'S COUNTERCLAIMS

In its March 30, 2009 and September 9, 2009, the district court dismissed Kant's counterclaims to Kousoulas's fee lien petition. We review de novo the dismissal of a complaint for failure to state a claim. *Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

### *(1) Tortious Interference with Prospective Economic Advantage*

In January 2009, Kant asserted a claim against Kousoulas for tortious interference with prospective economic advantage. He asserted that in January 2001, he received a one-year appointment as a visiting scholar at Columbia University, and that in the spring of 2002, the senior faculty in the Economics Department voted to hire him. In May 2002, Kant told Kousoulas that he was likely to receive a full-time faculty appointment.

6

However, within a week after Kant's conversation with Kousoulas, Columbia University advised him that he had not been selected for the position. Due to the timing of these two events, Kant believes that Kousoulas prevented him from obtaining the job at Columbia University. On March 30, 2009, the district court dismissed Kant's counterclaim as time-barred because it was filed beyond either New York's or New Jersey's statute of limitations for such claims.

The district court's decision is correct. Because the district court determined that Kant's claim was time-barred under either New York's or New Jersey's statute of limitations, it did not engage in a choice-of-law analysis. The New Jersey statute of limitations for a claim for tortious interference with prospective economic advantage is six years. N.J. STAT. ANN. § 2A:14-1. New York has a three-year statute of limitations for such claims. *Besicorp Ltd. v. Kahn*, 736 N.Y.S.2d 708, 711 (N.Y. App. Div. 2002). Under New Jersey law, "a statute of limitations begins to run when all elements of a cause of action are present, or, more plainly, from the moment of the wrong." *Michaels v. State of N.J.*, 955 F. Supp. 315, 326 (D.N.J. 1996) (internal citation and quotation omitted). Similarly, in New York, "a tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (N.Y. 2009). Here, Kant's claim accrued in May 2002, when he was told that he did not receive the position at Columbia University. Kant, did not, however, bring his tortious interference claim until January 27, 2009. The claim was therefore untimely under either New York or New Jersey law. Further, the district court properly determined that Kant did not

7

provide grounds to toll the statute of limitations on equitable grounds or delay it under the discovery rule.

### (2)  *Legal Malpractice*

Kant also claimed that Kousoulas had committed legal malpractice by, among other things, creating an expectation that he would recover $300,000 in damages from Seton Hall and failing to amend the original complaint to include a request for punitive damages.  The district court dismissed the claim because Kant failed to produce an Affidavit of Merit, as is required by New Jersey law.  *See* N.J. STAT. ANN. § 2A:53A-27.

Under New Jersey law, a plaintiff alleging malpractice by a licensed professional must, "provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."  *Id.* New Jersey does, however, provide that "[i]n lieu of an affidavit, the plaintiff may provide a sworn statement that, after written request, the defendant failed to provide the plaintiff with records that have a substantial bearing on the preparation of the affidavit." *Chamberlain v. Giampapa*, 210 F.3d 154, 157-58 (3d Cir. 2000) (citing to N.J. STAT. ANN. § 2A:53A-28).  Further, an affidavit is not required when the case turns on common knowledge.  "The factual predicate for a common knowledge case is one where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience."  *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003) (internal citation and quotation marks omitted).  If, however, "the claim's

8

underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession," an affidavit of merit is required. *Couri v. Gardner*, 801 A.2d 1134, 1141 (N.J. 2002). Kant unsuccessfully argues both that he substantially complied with the affidavit of merit requirement and that an affidavit is not required because his claim turns on common knowledge.[4]

First, to be relieved of the obligation to file an affidavit of merit, Kant was required to file a sworn statement that Kousoulas had failed to provide the documents that could form the basis of an affidavit of merit. N.J. STAT. ANN. § 2A:53-28. He claims that he provided such a statement. However, the document that he relies upon is an unsworn statement that he attached to a motion for default judgment, in which he asserted that Kousoulas had not complied with the district court's scheduling order regarding discovery and other pretrial matters. Apart from being unsworn, the statement does not assert that Kousoulas's alleged noncompliance with the scheduling order had any effect on Kant's ability to obtain an affidavit of merit, much less reference the affidavit of merit statute. Therefore, this document does not constitute a sworn statement under New Jersey law.

Kant also argues that because his claim sounded in contract and because its merit was "apparent from a reading of [his] complaint," no affidavit of merit was required. This argument lacks merit. His claim, which alleged that Kousoulas failed to adequately represent his interests in a 42 U.S.C. § 1983 action, required proof of a deviation from the

---

[4] We have determined that Kousoulas's remaining arguments regarding the affidavit of merit statute, which include an assertion that the statute is unconstitutional, are meritless.

professional standard of care and thus required an affidavit of merit. *See Couri*, 801 A.2d at 1151. The case did not fall within the "common knowledge" doctrine because the alleged professional failings of Kousoulas (including her legal judgment) were not so apparent that no expert was required to demonstrate a deviation from the accepted standard of care. *See Hubbard v. Reed*, 774 A.2d 495, 500-01 (N.J. 2001).

## C.     DENIAL OF MOTION FOR DEFAULT JUDGMENT

Finally, Kant's assertion that this Court should vacate the District Court's dismissal of his motion for default judgment as moot is meritless. Because the district court entered judgment in favor of Kousoulas, it properly denied as moot Kant's motion for default judgment. *See Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987) (stating that "questions of mootness are considered under a plenary standard of review").

### III.

In sum, for the foregoing reasons, we will affirm the district court's orders. Kant has also filed several motions before this Court, including a motion to reconsider our decision to dismiss his motion for a stay of execution of the district court's judgment. We now deny all of Kant's pending motions as moot. We grant Kousoulas's motion to file a supplemental brief.

10